UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MELVIN LEE VITKO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:08-cr-00171-JAW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING THE RECOMMENDED DECISION OF THE
MAGISTRATE JUDGE AND GRANTING RELIEF UNDER
28 U.S.C. § 2255**

Melvin Lee Vitko pleaded guilty to being a felon in possession of firearms and was sentenced to 188 months imprisonment under the residual clause of the Armed Career Criminal Act (ACCA).  Four years later, Mr. Vitko moved for relief under 28 U.S.C. § 2255, and the Magistrate Judge issued a recommended decision recommending that the Court deny the motion on timeliness grounds.  Subsequently, the United States Supreme Court decided *Johnson v. United States*, 135 S. Ct. 2551 (2015), holding that the imposition of an increased sentence under the residual clause of the ACCA violates the United States Constitution's guarantee of due process. Based on *Johnson*, the Court concludes that Mr. Vitko is serving a sentence that violates the United States Constitution and relief is warranted under 28 U.S.C. § 2255.

## I.     PROCEDURAL HISTORY

### A.     The Indictment and Sentencing

On September 11, 2008, a federal grand jury indicted Melvin Vitko on two-counts as a felon in possession of five firearms (Count One), a violation of 18 U.S.C. § 922(g)(1), and for possession of the same five firearms knowing they were stolen (Count 2), a violation of 18 U.S.C. § 922(j). *Indictment* at 1-3 (ECF No. 1) (*Indictment*).   The Indictment asserted seventeen prior convictions in the state of Florida: eight burglaries, four grand thefts, an escape, uttering a forged check, conspiracy to escape, felonious possession of firearms, and dealing in stolen property. *Id.*   Under the ACCA, 18 U.S.C. § 924(e), Mr. Vitko was subject to a mandatory minimum of fifteen years in prison if the Government could prove that he had at least three prior convictions for "violent felonies."[1]

Pursuant to a plea agreement, on November 7, 2008, Mr. Vitko pleaded guilty to Count 1 of the Indictment. *Plea Agreement* (ECF No. 13); *Entry* (ECF No. 15).   The Plea Agreement stated that Mr. Vitko was subject to a

---

[1]     Under the ACCA the term "violent felony" is defined as:

any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. 924(e)(2)(B).

mandatory minimum of fifteen years and up to life imprisonment for his alleged violation of the ACCA. *Plea Agreement* at 2. In exchange for Mr. Vitko's guilty plea, the Government agreed (1) to recommend a three-level reduction for acceptance of responsibility if the Court determined that his adjusted United States Sentencing Guidelines (U.S.S.G.) offense level was sixteen or higher, and (2) to move for the dismissal of count two of the Indictment. *Id.* at 2-3.

The revised presentence investigation report (PSR) provided the following offense level computations under the 2008 edition of the sentencing guidelines: pursuant to U.S.S.G. § 2K2.1(a)(6)(A), because as a convicted felon, Mr. Vitko was prohibited under 18 U.S.C. 922(g)(1) from shipping, transporting, or possessing a firearm at the time of the offense, a base offense level of fourteen applied; pursuant to U.S.S.G. § 2K2.1(b)(1)(A), two points were added because the offense involved five firearms; pursuant to § 2K2.1(b)(4)(A), an additional two points were added because the firearms were stolen; four points were added, pursuant to § 2K2.1(b)(6), because Mr. Vitko possessed the firearms in connection with another offense, in this case burglary; and pursuant to U.S.S.G. § 3E1.1, three points were subtracted for his acceptance of responsibility, for an adjusted offense level of nineteen.

The revised PSR also identified five prior violent felony convictions, four burglaries and one conspiracy to escape. Two of the burglaries involved unlawful entries into homes, and two involved unlawful entries into

businesses, all with the intent to commit theft and all in violation of Florida Statute section 810.02. The Government maintained that with any three of Mr. Vitko's prior convictions he would be considered an armed career criminal under the ACCA. In the PSR, due to Mr. Vitko's status as a career criminal under the ACCA and his use or possession of the firearms in connection with a burglary, pursuant to U.S.S.G. § 4B1.4(b)(3)(A), the adjusted offense level was determined to be thirty-four, and after three points were subtracted for his acceptance of responsibility, the total offense level was calculated to be thirty-one.

On April 14, 2009, the Court sentenced Mr. Vitko to 188 months imprisonment, five years supervised release, and a one hundred dollar special assessment.[2, 3] *Entry* (ECF No. 24); *J.* (ECF No. 27). In accordance with the plea agreement, Mr. Vitko could not and did not appeal the conviction, nor did he contest the enforceability of the appeal waiver provision. *Sentencing Tr.*, 27:12-28:13 (ECF No. 44.) (*Tr.*); *Plea Agreement* at 3. Although the plea agreement did not preclude an appeal of the sentence, he did not appeal the

---

[2]     Applying the sentencing guidelines, the Court concluded that although the total offense level would have been nineteen were it not for Mr. Vitko's career offender status, pursuant to U.S.S.G. § 4B1.4(b)(3)(A), his offense level was increased to thirty-four due to his status as a career offender. The Court reduced the offense level number by three points for acceptance of responsibility, which resulted in a total offense level of thirty-one. The Court assigned a criminal history category of VI, noting that the guidelines range was 188-235 months. After discussing the sentencing factors in 18 U.S.C. § 3553, the Court imposed a sentence of 188 months of imprisonment, followed by a term of five years of supervised release. The Court granted the Government's motion to dismiss count two of the indictment. *See Sentencing Tr.* 7:9-29:20.

[3]     An amended judgment was entered on May 6, 2009. *Am. J.* (ECF No. 31). The judgment was amended to add that the Court recommended vocational training in the field of graphic arts if possible, as the Court stated at the sentencing hearing. *Id.*

sentence.[4]  *Id.*  On May 16, 2009, the amended judgment became final at the expiration of the appeal period.[5]

### B.      28 U.S.C. § 2255 Appeal

Mr. Vitko represented that he placed his 28 U.S.C. § 2255 motion in the prison mailing system on April 18, 2014; his motion was filed on April 23, 2014.  *Mot. to Vacate, Set Aside or Correct Sentence* at 13 (ECF No. 32).  On June 9, 2014, he filed but later withdrew a motion to amend his § 2255 motion.  *Mot. to Amend/Suppl.* (ECF No. 35); *Letter re Mot. to Amend* (ECF No 45).  On August 19, 2014, the Government filed a motion for summary dismissal of Mr. Vitko's § 2255 motion.  *Gov't Mot. for Summ. Disposition of "Mot. under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody"* (ECF No. 50).  Mr. Vitko replied to the Government's motion on October 24, 2014.  *Pet'r's Reply to Gov't Mot. for Summ. Disposition of Mot. to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255* (ECF No. 57).  On January 15, 2015, the Magistrate Judge issued a recommended decision for the Court to deny relief and dismiss Mr. Vitko's § 2255 motion.  *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 58) (*Rec. Dec.*).

---

[4]      In the plea agreement, Mr. Vitko waived the right to appeal his guilty plea and any other aspect of his conviction and a sentence of imprisonment that did not exceed 180 months.  *Plea Agreement* at 3.  In addition, however, the appeal waiver did not "apply to appeals based on a right that has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." *Id.* at 4.

[5]      At the time of the judgment, the appeal period was ten days; the rules were amended effective December 1, 2009, and the appeal period is currently 14 days. FED. R. APP. P. 4(b)(1)(A)(i); 2009 advisory committee's note; Orders of the Supreme Court of the United States Adopting and Amending Rules, Order of March 26, 2009.

C.     **The Impact of *Johnson***

On January 26, 2015, Mr. Vitko filed two motions, both seeking to stay proceedings regarding his § 2255 motion.  *Pet'r's Mot. to Stay Proceedings regarding Pending Pet. for Writ of Habeas Corpus under 28 U.S.C. § 2255.* (ECF No. 59) (*First Mot. to Stay*); *Pet'r's Mot. Requesting Stay of Proceedings relating to Pending 28 U.S.C. § 2255 Pet.* (ECF No. 60) (*Second Mot. to Stay*). The motions cited the United State Supreme Court's January 9, 2015 order to the parties in *Johnson v. United States* to brief and argue "[w]hether the residual clause in the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(B)(ii), is unconstitutionally vague." *Second Mot. to Stay* at 1.  Mr. Vitko urged that since his "predicate offenses are only 'violent felonies' when viewed in the context of the residual clause, a decision by the Supreme Court that 18 U.S.C. [§] 924(e)(2)(B)(ii) is unconstitutionally vague would favorably affect the outcome of this case now before the court." *Id.* at 2.  The Government did not object.  *Gov't's Resp. to Pet.'s Mots. Requesting Stay of Proceedings Relating to Pending 28 U.S.C. § 2255* (ECF No. 62).   On February 11, 2015, the Magistrate Judge granted Mr. Vitko's motions for stay.  (ECF Nos. 63, 64).

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, holding that imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process.  135 S. Ct. 2551 (2015).  On July 7, 2015, citing *Johnson*, Mr. Vitko filed motions to

amend and supplement his § 2255 motion.  *Mot. for Leave to Amend 28 U.S.C. § 2255* (ECF No. 65); *Mot. for Leave to Supp. 28 U.S.C. § 2255* (ECF No. 66).  On July 20, 2015, Mr. Vitko filed his objections to the Magistrate Judge's Recommended Decision and a supplemental brief on the *Johnson* decision.  *Objs. to the Magistrate's Recommendation and Suppl. Brief on Johnson v. United States* (ECF No. 67) (*Def.'s Obj.*).  Subsequently, on July 27, 2015, Mr. Vitko filed a letter of supplemental authority, providing recent caselaw stemming from the *Johnson* decision.  *Letter of Suppl. Authority* (ECF No. 70).  On August 11, 2015, the Government filed a response to Mr. Vitko's July 27, 2015 letter, arguing against his assertion that *Johnson* stands for the proposition that he is entitled to relief under § 2255.  *Gov't's Resp. to Letter of Suppl. Authority* (ECF No. 71).  Mr. Vitko filed a reply to the Government's response on August 20, 2015.  *Pet.'s Mot. to Strike Gov't's Resp. as Argumentative/Pet.'s Reply and Objs. to Gov't's Response to Pet.'s Letter of Suppl. Authority* (ECF No. 72).

The Court appointed counsel to represent Mr. Vitko on September 2, 2015.  *Order Appointing Counsel* (ECF No. 76).  On September 22, 2015, through his newly appointed counsel, Mr. Vitko filed a memorandum in support of his § 2255 motion, specifically addressing the impact of *Johnson. Mem. of Law in Supp. of Def.'s Mot. to Vacate, Set Aside, or Correct Sentence (Johnson Issue)* (ECF No. 79) (*Def.'s Johnson Mem.*).  The Government responded to Mr. Vitko's memorandum on November 24, 2015.  *Gov't's Resp.*

*to Mem. in Supp. of Def.'s Mot. to Vacate, Set Aside or Correct Sentence* (ECF No. 86) (*Gov't's Opp'n Mem.*).  Mr. Vitko replied on December 9, 2015.  *Def.'s Reply to the Gov't's Resp. to Def.'s Mem. in Supp. of Mot. to Vacate, Set Aside or Correct Sentence* (ECF No. 87) (*Def.'s Reply Mem.*).

## II.   THE PARTIES' POSITIONS

### A.   The Magistrate Judge's Recommended Decision

On January 15, 2015, the Magistrate Judge issued his Recommended Decision that the Court deny relief and dismiss Mr. Vitko's § 2255 motion. *Rec. Dec.* at 11.  The Magistrate Judge's determination centered on the issue of the timeliness of Mr. Vitko's § 2255 motion.  *Id.* at 7.  Section 2255 provides:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)-(4).  As Mr. Vitko conceded that because he filed his §
2255 motion well over one year after judgment became final, § 2255(f)(1) did
not apply, and as § 2255(f)(2) and (4) were not relevant, the Magistrate Judge
focused his analysis on § 2255(f)(3).  *See Rec. Dec.* at 7-11.  Mr. Vitko argued
that the Supreme Court's decision of *Descamps v. United States*, 133 S. Ct.
2276 (2013) triggered § 2255(f)(3), asserting *Descamps* recognized a new right
applicable to his case.  *Id.* at 7-8.  The Magistrate Judge disagreed.

In *Descamps*, the Supreme Court outlined the method courts must use
to determine whether a prior conviction is a "violent felony" under the ACCA
for purposes of enhanced sentencing. 133 S. Ct. at 2281.  In relevant part, the
Court stated:

> The Armed Career Criminal Act (ACCA or Act), 18 U.S.C. §
> 924(e), increases the sentences of certain federal defendants who
> have three prior convictions 'for a violent felony,' including
> 'burglary, arson, or extortion.'  To determine whether a past
> conviction is for one of those crimes, courts use what has become
> known as the 'categorical approach': They compare the elements
> of the statute forming the basis of the defendant's conviction
> with the elements of the 'generic' crime—i.e., the offense as
> commonly understood. The prior conviction qualifies as an
> ACCA predicate only if the statute's elements are the same as,
> or narrower than, those of the generic offense.
>
> We have previously approved a variant of this method—labeled
> (not very inventively) the 'modified categorical approach'—when
> a prior conviction is for violating a so-called 'divisible statute.'

*Id.*  The Magistrate Judge found that contrary to Mr. Vitko's argument,
*Descamps* did not recognize a new right applicable to his case.  *Rec. Dec.* at 8.
The Magistrate Judge explained:

> [i]n *Descamps*, the Supreme Court stated: 'Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case.' 133 S. Ct. at 2283. . . . The Supreme Court did not consider *Descamps* to recognize a new right. *See United States v. Tenderholt*, No. 14-8051, 2014 WL 7146025, at *2, 2014 U.S. App. Lexis 23704, at *3-4 (10th Cir. Dec. 16, 2014) (holding that *Descamps* did not create a new right). Because the Supreme Court in *Descamps* did not create a new right, Petitioner cannot successfully rely on *Descamps* in his effort to convince the Court that he filed timely his section 2255 motion.

*Rec. Dec.* at 8-9.

Next, the Magistrate Judge turned to *James v. United States*, 550 U.S. 192 (2007) and *United States v. Sanchez-Ramirez*, 570 F.3d 75 (1st Cir. 2009) to further explain why *Descamps* was not applicable. *Rec. Dec.* at 9-11. The Magistrate Judge noted that when Mr. Vitko committed his prior felonies, Florida law defined "burglary" to mean "entering or remaining in a structure or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain," *Id.* (Fla. Stat. § 810.02(1)), and the Florida law defined "structure" as a "building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof." *Id.* (Fla. Stat. § 810.011(1)). The Magistrate Judge observed that in *James*, the Supreme Court held that "the inclusion of curtilage" in the definition of "dwelling" under section 810.011(2) "takes Florida's underlying offense of burglary outside the definition of 'generic burglary' . . . ," *James*, 550 U.S. at 212, and by applying a categorical approach, "the Supreme Court held that a

prior conviction for attempted burglary of either a dwelling or its curtilage constitutes a violent felony under the residual clause of the ACCA because the crime of attempted burglary 'involves conduct that presents a serious potential risk of physical injury to another.'" *Rec. Dec.* at 9-10 (quoting *James*, 505 U.S. at 201-02, 213).

Moreover, the Magistrate Judge discussed that in *Sanchez-Ramirez* the First Circuit applied the reasoning of the Supreme Court in *James* to three ACCA predicate crimes of burglary of unoccupied churches in Florida:

> a conviction for burglary of a 'structure', as that term is defined in Florida statute 810.011, is a violent felony under 18 U.S.C. § 924(e)(2)(B)(ii), not because the crime falls within the rubric of 'generic burglary', but rather because it involves serious risk of injury to others and therefore fits within the residual clause of section 924(e)(2)(B)(ii).

*Rec. Dec.* at 10 (internal citations and footnotes omitted).

Applying the categorical approach set forth in *James* and *Sanchez-Ramirez* to Mr. Vitko's predicate crimes, the Magistrate Judge reasoned that they "must be considered violent felonies under the residual clause of section 924(e)(2)(B)(ii)," because the crimes involved "conduct that presents a serious potential risk of physical injury to another." *Id.* at 11 (citing 18 U.S.C. § 924(e)(2)(B)(ii)). The Magistrate Judge concluded that *Descamps* was therefore inapplicable, did not trigger 28 U.S.C. § 2255(f)(3), and Mr. Vitko's motion must fail. *Id.*

**B.  Mr. Vitko's Objections to the Magistrate Judge's Recommended Decision and Supplemental Brief on *Johnson***

Following the Court's granting of Mr. Vitko's motions to stay pending *Johnson*, (ECF Nos. 63, 64), and his filing of motions to amend and supplement his § 2255 motion after *Johnson*, (ECF Nos. 65, 66), Mr. Vitko filed objections to the Magistrate Judge's recommended decision and a supplemental brief addressing the impact of *Johnson*. *Def.'s Obj.* at 1-26.

Mr. Vitko raises a number of objections to the Magistrate Judge's Recommended Decision, including: (1) two of the convictions used to apply the ACCA enhancement were from pleas of nolo contendere and a nolo contendere plea "cannot be relied upon to support a determination that a defendant committed a crime in some specific or particular manner or, that by his nolo plea, he is admitting to having committed the necessary elements of the charged crime," *id.* at 4; (2) the conspiracy to escape conviction is not a predicate crime of violence for ACCA purposes, *id.* at 6-7; (3) the Magistrate Judge abused his discretion and denied Mr. Vitko due process by refusing to allow him "unfettered access to the presentence report or alternatively, affording [him] court appointed counsel," *id.* at 8-9; (4) the Magistrate Judge improperly relied on the presentence report as a means to establish his predicate ACCA convictions, *id.* at 9-12; and (5) *Johnson* invalidates the Recommended Decision because it determined that Florida Statute section 810.02 only qualified as an ACCA predicate crime under the residual clause of 18 U.S.C. § 924(e). *Id.* at 12-14.

Further, Mr. Vitko argues that because the predicate violent felonies

used to impose an enhanced sentence on him relied on the residual clause of the ACCA, and because *Johnson* held the residual clause unconstitutionally vague, he has been improperly and unlawfully sentenced as an armed career criminal.   *Id.* at 21.   Mr. Vitko implores the Court to retroactively apply *Johnson* to his case under 28 U.S.C. § 2255(f)(3), as district courts "may issue opinions on initial petitions for collateral review holding in the first instance that a new rule is retroactive in the absence of a specific finding to that effect by the Supreme Court."   *Id.* at 23 (collecting cases).   Additionally, Mr. Vitko argues that because *Johnson* announced a new, substantive rule that narrows the ACCA, *Johnson* should be applied retroactively.   *Id.* at 24 (citing *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004)).

C.      **The *Johnson* Memoranda**

1.      **Mr. Vitko's Memorandum Addressing the Impact of *Johnson* on his § 2255 Motion**

Mr. Vitko argues that the Magistrate Judge correctly concluded that the four burglary convictions under Florida Statute section 810.02 used as ACCA predicate offenses – as well as three other Florida burglary convictions not used as ACCA predicates – are not "generic burglaries," and because those burglaries and the conspiracy to escape charge could only qualify as violent offenses under the ACCA's now unconstitutional residual clause, his conviction under the ACCA should be vacated and he should be resentenced subject to a statutory maximum penalty of ten years under 18 U.S.C. § 922(g).   *Def.'s Johnson Mem.* at 5.

Mr. Vitko urges the Court to adopt the Magistrate Judge's categorical analysis of Florida Statute section 810.02, and in doing so to examine state caselaw, charging documents and relevant jury instructions in order to determine whether any of his convictions in fact constitutes a generic burglary under the ACCA.  *Id.* at 6.  Focusing on the fact that the definitions of "dwelling" and "structure" under Florida Statute section 810.011 incorporate the "curtilage," Mr. Vitko argues that "[i]f a charging document, as written and interpreted by state law, would allow conviction for burglary by merely entering the curtilage of the premises, the charge is not a generic burglary."  *Id.* at 7.

Additionally, Mr. Vitko argues that Florida jury instructions for burglary,[6] which describe a structure as a "building," "business," or "home," "do not limit the proof necessary to convict to actual entry of a building.  They are mere surplusage," and under Florida law "deviations from the facts alleged in the charging document [are] permitted [if] . . . the changed facts [are] not essential elements of the charged offense."  *Id.* at 8 (quoting *Ingleton v. State*, 700 So.2d 735, 739 (Fla. 5th DCA 1997)).   Mr. Vitko asserts that a "Florida instrument charging entry into a 'building,' 'business' or 'home' does not suffer a fatal variance if the state merely proves that the person entered the curtilage of the building or . . . home, so long as the instrument charges the essential element of entry into a 'structure' or 'dwelling.'"  *Id.* at 9; *see Baker v. State*, 622 So.2d 1333 (Fla. 1st DCA 1993) (supporting assertion that

---

[6]     *See Def.'s Johnson Mem.* Attach 1 *Fla. Std. Jury Instr. 13.1* (ECF No. 79).

14

variance between the charging language of entry into a dwelling and proof only of entry into curtilage was held immaterial); *Greer v. State*, 354 So.2d 952 (Fla. 3rd DCA 1978) (same).

Next, examining the charging documents against him for the seven applicable Florida burglaries, Mr. Vitko argues that entry into the curtilage of the burglarized structure or dwelling was all that was needed to prove the entry element of each conviction, and thus they were not generic burglaries under the ACCA and could only be predicate offenses under the now unconstitutional residual clause. *Id.* at 10-12. Also, because the conspiracy to escape charge "was not a burglary, arson or extortion and did not involve the use of explosives," Mr. Vitko contends that it too could only apply under the now unconstitutional residual clause. *Id.* at 12-13.

### 2.    The Government's Response to Mr. Vitko's Memorandum

The Government takes the position that *Johnson* announced a new substantive rule and therefore is retroactively applicable to meritorious ACCA claims grounded in the residual clause. *Gov't's Opp'n Mem.* at 3. However, the Government contends that the Court need not address retroactivity because the record does not show that the Court relied on the residual clause to sentence Mr. Vitko. *Id.* at 4.

Analyzing the certified copies of the seven Florida burglary convictions, the Government asserts that each of the crimes amount to "generic burglary" because they consist of the requisite elements – unlawful

or unprivileged entry into, or remaining in, a building or structure, with the intent to commit a crime. *See id.* at 4-8 (citing *Taylor v. United States*, 495 U.S. 575, 587-88 (1990)). Moreover, the Government argues that the record supports the conclusion that the Court and the parties at all times considered these convictions to qualify as enumerated ACCA predicate burglaries, not as predicates under the residual clause. *Id.* at 9. Specifically, the Government notes that Mr. Vitko never objected to the ACCA sentence enhancement leading up to and during the sentencing hearing, and that during the sentencing hearing, there was no reference to the residual clause by either party or the Court. *Id.*

Additionally, the Government argues that because none of the charging instruments alleged or specifically referenced illegal entry into the curtilage, and because the record provides clear evidence that each burglary involved unauthorized entry into an actual structure or dwelling, "the plain language of the charging instruments excludes the possibility that Vitko was convicted of unlawful entry onto the curtilage instead of unlawful entry into an actual structure or dwelling." *Id.* at 9-11. Also, as the record is devoid of any reference to the residual clause, the Government contends that "the evidence concerning the specific clause of the ACCA on which the Court relied is in equipoise," because the evidence concerning the issue is of equal weight, and because Mr. Vitko carries the burden, his argument must fail. *Id.* at 11.

Finally, the Government argues that even though the Magistrate Judge's Recommended Decision was issued before *Johnson* and relied on the now defunct residual clause, the Magistrate Judge "expressly left open the possibility that predicate convictions could continue to qualify under the 'force' or 'enumerated' crimes provisions of the ACCA," and thus there remains the possibility of a "post-*Johnson* analysis of the convictions as 'generic burglary.'" *Id.* at 12.

### 3.    Mr. Vitko's Reply

Mr. Vitko denies the Government's assertion that the predicate convictions were "generic burglaries" under the ACCA and argues that the Government's interpretation of "structure" and "dwelling" ignores the statutory definition of those words, noting that under Florida Statute section 810.11 any "charging document [that] uses either term, the curtilage of any physical structure on the property is implicitly included." *Def.'s Reply Mem.* at 1-2.

Mr. Vitko further asserts that it is more likely than not this Court did apply the residual clause of the ACCA to his sentencing, as the Court may be presumed to have followed then-existing Supreme Court precedent under *James* that convictions under Florida Statute section 810.02 were ACCA predicates by virtue of the residual clause. *Id.* at 4. Mr. Vitko submits that even if this presumption does not meet his burden, at the very least it acts as prima facie evidence that the Court classified the burglaries as ACCA

predicates under the residual clause, which is sufficient to place this matter before the Court. *Id.* (citing *Pakala v. United States*, 804 F.3d 139 (1st Cir. 2015)). Mr. Vitko maintains that with prima facie evidence the Court may decide whether it was aware of, or followed, *James* at his sentencing. *Id.* (citing *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993)).

Furthermore, Mr. Vitko again argues that *Johnson* created a new, substantive rule, and narrowed the scope of the ACCA by reducing the applicable maximum penalty for violations under § 922(g), and as such applies retroactively. *Id.* at 4-6. He also notes that the circuit courts are split on the issue and asks the Court to adopt the Seventh Circuit's interpretation that the Supreme Court made *Johnson* categorically retroactive. *Id.* at 7 (citing *Price v. United States*, 795 F.3d 731, 733-35 (7th Cir. 2015)).

## III.   LEGAL STANDARD

A prisoner may move to vacate, set aside, or correct his sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a);[7] *see Knight v.*

---

[7]       Title 28 U.S.C. § 2255(a) reads:

A prisoner in custody under sentence of a court established by Act of
Congress claiming the right to be released upon the ground that the sentence

*United States*, 37 F.3d 769, 772 (1st Cir. 1994). Here, given that Mr. Vitko alleges *Johnson* makes his sentence under the ACCA residual clause unconstitutional under the Due Process clause of the Fifth Amendment, Mr. Vitko's argues that the sentence was imposed in violation of "the Constitution or laws of the United States." 28 U.S.C. § 2255(a)(1).

The burden is on the section 2255 petitioner to establish by a preponderance of the evidence that he is entitled to § 2255 relief. *Ramos-Martinez v. United States*, 638 F.3d 315, 325 (1st Cir. 2011); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).

## IV.   DISCUSSION

### A.   Retroactivity of *Johnson*

The United States Supreme Court now has before it the question of *Johnson* retroactivity. *Welch v. United States*, 136 S. Ct. 790 (2016). The case was argued on March 30, 2016. This Court could prudentially await the decision of the Supreme Court in *Welch* for an authoritative opinion on the issue of retroactivity. However, this Court's decision does not mean that Mr. Vitko will immediately be released from incarceration, only that he will be resentenced, and it may be that the Supreme Court will issue a decision in *Welch* before resentencing. The Court concludes that the wiser course is to

---

was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

rule on retroactivity so that the resentencing process may begin.

If the Supreme Court issues a decision in *Welch* before resentencing, this Court will be instructed on how to proceed. If the Supreme Court does not issue a decision in *Welch* before resentencing, the Court will be in no more difficult a position than in other cases where it has concluded that *Johnson* is retroactive. As Mr. Vitko is currently incarcerated and is the potential beneficiary of a much shorter sentence, even one that may require his immediate release, the Court is determined to proceed as expeditiously as possible. The Court turns to the state of the law on retroactivity.

The First Circuit has not directly addressed whether the Supreme Court made *Johnson* retroactive, and other circuits are divided on the issue. *Pakala*, 804 F.3d at 139 n.1;[8] *compare Price*, 795 F.3d at 734-35 (granting certification under § 2255(h)(2) on the grounds that the Supreme Court had made *Johnson's* new rule of constitutional law categorically retroactive to cases on collateral review, and that the defendant had made a prima facie showing that he might be entitled to sentencing relief under *Johnson*); *with In re Rivero*, 797 F.3d 986, 989 (11th Cir. 2015)( "[n]o combination of

---

[8]     *Pakala* involved a prisoner filing a second habeas petition under § 2255(h), asserting that *Johnson* applied retroactively to his sentence as an armed career criminal under the residual clause of the ACCA. 804 F.3d at 139. In deciding to grant certification of the motion to file a second habeas petition, the First Circuit examined "whether the petition 'contain[s] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable,'" and in doing so asked "whether the 'application makes a prima facie showing' that satisfies the applicable requirements." *Id.* (quoting *Evans-Garcia v. United States*, 744 F.3d 235, 237 (1st Cir. 2014)). The government conceded, and the *Pakala* Court agreed, that the petitioner made a prima facie showing that the new constitutional rule announced in *Johnson* had been made retroactive by the Supreme Court, and qualified as a basis for habeas relief on a second or successive habeas petition under § 2255(h). *Id.* at 139-140.

holdings of the Supreme Court 'necessarily dictate' that *Johnson* should be applied retroactively on collateral review"), *and In re Gieswein*, 802 F.3d 1143, 1146-48 (10th Cir. 2015) (Supreme Court has not made new rule of constitutional law in *Johnson* retroactive to cases on collateral review).

In dealing with habeas petitions under § 2255(f)(3), the First Circuit has held that "'[d]istrict and appellate courts, no less than the Supreme Court, may issue opinions' on initial petitions for collateral review holding in the first instance that a new rule is retroactive in the absence of a specific finding to that effect by the Supreme Court.'" *Butterworth v. United States*, 775 F.3d 459, 464 (1st Cir. 2015) (citing *Ashley v. United States*, 266 F.3d 671, 673 (7th Cir. 2001)).

The Government's position is that *Johnson* "announced a new substantive rule insofar as statutory ACCA claims are concerned and therefore is retroactively applicable to meritorious ACCA claims grounded in the residual clause." *Gov't's Opp'n Mem*. at 3.  This District shares this view, as it has done so before.  *See Ayotte v. United States*, 1:15-cv-00272-JAW, 1:11-cr-00156-JAW, 2015 U.S. Dist. LEXIS 132516, at *3 (D. Me. Sept. 30, 2015) ("The Court concludes that based on the holding of *Johnson*, Petitioner is serving a sentence that violates the Constitution and, therefore, relief under 28 U.S.C. § 2255(a) is warranted"); *United States v. Powell*, 1:03-cr-00061-JAW, 2015 U.S. Dist. LEXIS 143507, at *3 (D. Me. October 22, 2015) (same); *United States v. Richards*, No. 2:05-cr-10-DBH, 2:15-cv-287-DBH,

2015 U.S. Dist. LEXIS 175857, at *1 (D. Me. Aug. 28, 2015).

### B.   Timeliness under 28 U.S.C. § 2255(f)(3)

Mr. Vitko initially filed his § 2255 motion under the theory that the Supreme Court's *Descamps* decision triggered § 2255(f)(3) because it recognized a new right applicable to his sentencing. *Rec. Dec.* at 7-8. The Magistrate Judge determined that the Supreme Court did not create a new right in *Descamps* and Mr. Vitko may not successfully rely on *Descamps* to establish that he timely filed his § 2255 motion. *Id.* at 8-9. However, *Johnson* was decided on June 26, 2015, and on July 7, 2015, citing *Johnson*, Mr. Vitko filed motions to amend and supplement his § 2255 motion. (ECF Nos. 65, 66). Because the Supreme Court announced a new, substantive rule in *Johnson*, the basis upon which Mr. Vitko amended his § 2255 habeas petition, the motion is timely under § 2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3)

### C.   Mr. Vitko's Sentence under the Residual Clause

#### 1.   Burglary in Florida

Florida defined the crime of burglary at the time of Vitko's convictions as follows: "'Burglary' means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein,

unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain." Fla. Stat. § 810.02(1).  As earlier noted, definitions of "structure" and "dwelling" in Florida include curtilage.[9] Fla. Stat. § 810.011(1), (2).

## 2.    The *Taylor* Analysis

To determine whether Mr. Vitco's convictions fall within the ACCA, the Court must apply the *Taylor* two-tiered analysis.  *Taylor*, 495 U.S. at 599-601.  In *Taylor*, the Supreme Court concluded:

> [A] person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or a structure, with intent to commit a crime.

*Id.* at 599.  The *Taylor* Court noted that some state criminal statutes define "burglary" more broadly than the generic definition of burglary, and addressed whether "in the case of a defendant who has been convicted under a nongeneric-burglary statute, the Government may seek enhancement on the ground that he actually committed a generic burglary."  *Id.* at 599-600. In deciding this question, the Supreme Court adopted a categorical approach to determine whether a state statute met the federal definition for a predicate offense – those listed in 924(e)(2)(B)(ii).[10]  *Id.* at 600-01.

---

[9]      Under Florida Statute section 810.011(1) "structure" means "a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof." Likewise, under section 810.011(2) "dwelling" means "a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof."

[10]     *Johnson* did not abandon *Taylor*'s categorical approach.  *See Johnson*, 135 S. Ct. at

The two-step categorical approach requires a court first to review the statutory elements of the prior crime and compare them to the elements of a generic burglary. *United States v. Cadieux*, 500 F.3d 37, 42-43 (1st Cir. 2006). Under this prong, the "inquiring court, confronted with a prior burglary conviction, must first examine whether the conviction was based upon a statute that dovetails with the definition of generic burglary." *United States v. Miller*, 478 F.3d 48, 50 (1st Cir. 2007). If it does, the "inquiry ends and the prior conviction may be used as an ACCA predicate." *Id.* at 50-51. If the "underlying statute sweeps more broadly and defines burglary in terms that encompass but exceed the parameters of the generic definition, the court must move to the second step of the *Taylor* pavane in order to determine if the particular conviction actually embodied every element of a violent felony." *Id.* at 51 (internal punctuation omitted).

### 3.   The *Taylor* Analysis: The Florida Burglary Statute and Curtilage

As discussed, Florida's burglary statute is untraditional in that it includes curtilage in its definition of "structure." Fla. Stat. § 810.011(1). Interpreting the same Florida statute, the United States Supreme Court concluded that the "inclusion of curtilage takes Florida's underlying offense of burglary outside the definition of generic burglary set forth in *Taylor*, which requires an unlawful entry into, or remaining in a *'building or other structure.'*" *James*, 550 U.S. at 212 (emphasis in original). The First Circuit

---

2562.

adopted this view in *Sanchez-Ramirez*, addressing Florida Statute section 810.02.   570 F.3d at 82 n.7.   Specifically, in assessing whether three burglaries of unoccupied churches charged under Florida Statute section 810.02 were generic burglaries under the enumerated "burglary" provision of the ACCA, the First Circuit determined:

> The predicates at issue do not fit within clause (i) of the ACCA because they do not have the threat or use of physical force as an element. For the ACCA to apply under the enumerated "burglary" provision of clause (ii), [the defendant's] convictions would have to be for so-called "generic" burglary, defined as "the unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime. . . ."   Because Florida's burglary statute includes curtilage within its reach, and because the documents permissibly reviewed under [*Shepard*][11] do not exclude the possibility that [the defendant] was convicted of "non-generic" burglary, we look only to the residual clause.

*Id.* (citations omitted).

Mr. Vitko's predicate convictions do not fit within clause (i) of the ACCA because they do not have the threat or use of physical force as an element, and under clause (ii) the burglaries committed under Florida Statute section 810.02 are not generic because they can include burglary of the curtilage.   Additionally, after reviewing the documents permissible under *Shepard*,[12] the Court concludes that it was possible that Mr. Vitko was

---

[11]   *Shepard v. United States*, 544 U.S. 13, 15-16 (2005).

[12]   *Shepard* held that in assessing the applicability of the ACCA to "non-generic" burglary statutes "*Taylor* is clear that any enquiry beyond statute and charging document must be narrowly restricted to implement the object of the statute and avoid evidentiary disputes." *Shepard*, 544 U.S. at 23 n.4; *see also Miller*, 478 F.3d at 51 (citing *Shepard*, 544 U.S. at 26) ("[T]he court must restrict its inquiry to documents within the carapace of the record of conviction, such as 'the charging document, the terms of the plea agreement or transcript of the colloquy between judge and defendant in which the factual basis for the plea

convicted of "non-generic" burglary.   Specifically, assessing the charging documents for the seven applicable burglaries Mr. Vitko committed in Florida, all make reference to him entering a "structure," which, as defined under Florida Statute section 810.011, includes the curtilage, and thus would allow for a conviction for burglary merely by entering the curtilage of the premises. *See Govt's Mot. for Summ. Disposition of "Mot. under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody"* Attach. 1 *Florida Convictions*, at 1-9 (ECF No. 50).

The Government argues that because at Mr. Vitko's sentencing there was no mention of the term "residual clause" or *James*, Mr. Vitko has failed to meet his burden to prove that the Court found him to be an armed career criminal for his burglary convictions under the residual clause of the ACCA, and not for enumerated, generic burglaries under 18 U.S.C. § 924(e)(2)(B)(ii). This argument must fail.   The Court sentenced Mr. Vitko on April 14, 2009. *J.* Sixteen months prior, on December 21, 2007, this Court issued an order concluding that Cosme Sanchez-Ramirez, having been found guilty of, inter alia, violating 18 U.S.C. 922(g)(1), Felon in Possession of a Firearm, was subject to the armed career criminal enhancement under the ACCA. *United States v. Ramirez*, No. CR-05-71-B-W, 2007 WL 4571143, at *1 (D. Me. Dec. 21, 2007).   Specifically, Mr. Sanchez-Ramirez had three prior convictions[13] for burglary in the state of Florida, charged under Florida Statute section

---

was confirmed by the defendant, or some comparable judicial record of this information'").

[13]    Mr. Sanchez-Ramirez was sentenced for two burglaries in Florida on March 1, 1990, and for a third, also in Florida, on April 27, 1995. *Ramirez*, 2007 WL 4571143, at *1.

26

810.02. *Id.* The Court found that, when applying *Taylor* and then recent Supreme Court decision of *James*, the convictions were for "non-generic" burglaries, subject to the residual clause of the ACCA, as all three "involve[d] conduct that presents a serious potential risk of physical injury to another." *Id.* at *5 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). The First Circuit affirmed. *United States v. Sanchez-Ramirez*, 570 F.3d 75 (1st Cir. 2009). At Mr. Vitko's sentencing, the Court was aware of the applicable caselaw on the issue and it found Mr. Vitko's sentence must be enhanced because his predicate burglaries were conduct that presented a serious potential risk of physical injury to another under the residual clause of the ACCA. Finally, under *Johnson*, Mr. Vitko's prior conviction for conspiracy to escape may no longer be considered a predicate offense under the residual clause of the ACCA.

## V.   CONCLUSION

Based on *Johnson*, the Court concludes that Mr. Vitko is serving a sentence that violates the United States Constitution and, therefore, relief under 28 U.S.C. § 2255(a) is warranted. Accordingly, the Court grants his motion under 28 U.S.C. § 2255 and orders he be resentenced under 18 U.S.C. § 922(g)(1).

1. It is therefore <u>ORDERED</u> that the recommended decision (ECF No. 58) of the Magistrate Judge be and hereby is <u>DENIED</u>.

2. Accordingly, it is hereby <u>ORDERED</u> that Melvin Vitko's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 32) be and hereby is <u>GRANTED</u>.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE


Dated this 4th day of April, 2016