UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MELVIN LEE VITKO, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | 1:08-cr-00171-JAW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**ORDER ON MOTION FOR RECONSIDERATION**

Based on the Supreme Court's decision in *Johnson v. United States* striking the residual clause of the Armed Career Criminal Act (ACCA) as unconstitutional, the Court concluded that Mr. Vitko is serving a sentence that violates the United States Constitution and, therefore, relief was warranted under 28 U.S.C. § 2255. The Court ordered he be resentenced. In response to the Court's Order, the Government filed a motion for reconsideration, asking the Court to rethink its decision and deny Mr. Vitko relief. The Court denies the Government's motion and again orders Mr. Vitko resentenced because (1) Florida law leaves the possibility that Mr. Vitko was convicted of non-generic burglary as defined under the ACCA, (2) Mr. Vitko has met his burden of proof, and (3) burglary under Florida law does not constitute a "violent felony" under the "force" clause of the ACCA.

**I.     PROCEDURAL BACKGROUND**

The Court provides an abbreviated synopsis of the procedural background. Greater detail is found in the Order under reconsideration. *See Order Den. the*

*Recommended Decision of the Magistrate Judge and Granting Relief under 28 U.S.C. § 2255* (ECF No. 88) (*Order*).

On September 11, 2008, a federal grand jury indicted Melvin Vitko on two-counts as a felon in possession of five firearms (Count One), a violation of 18 U.S.C. § 922(g)(1), and for possession of the same five firearms knowing they were stolen (Count 2), a violation of 18 U.S.C. § 922(j). *Indictment* at 1-3 (ECF No. 1) (*Indictment*). The Indictment asserted seventeen prior convictions in the state of Florida: eight burglaries, four grand thefts, an escape, uttering a forged check, conspiracy to escape, felonious possession of firearms, and dealing in stolen property. *Id.* Under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), Mr. Vitko was subject to a mandatory minimum of fifteen years in prison if the Government could prove that he had at least three prior convictions for "violent felonies."[1] Pursuant to a plea agreement, on November 7, 2008, Mr. Vitko pleaded guilty to Count 1 of the Indictment. *Plea Agreement* (ECF No. 13); *Entry* (ECF No. 15). On April 14, 2009, the Court sentenced Mr. Vitko to 188 months imprisonment, five years supervised

---

[1]     Under the ACCA the term "violent felony" is defined as:

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. 924(e)(2)(B).

2

release, and a $100 special assessment. *Entry* (ECF No. 24); *J.* (ECF No. 27).

Mr. Vitko filed a motion pursuant to 28 U.S.C. § 2255 on April 23, 2014. *Mot. to Vacate, Set Aside or Correct Sentence* (ECF No. 32). On January 15, 2015, the Magistrate Judge issued a recommended decision for the Court to deny relief and dismiss Mr. Vitko's § 2255 motion. *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 58). However, on January 26, 2015, Mr. Vitko filed two motions, each seeking to stay proceedings regarding his § 2255 motion. *Pet'r's Mot. to Stay Proceedings regarding Pending Pet. for Writ of Habeas Corpus under 28 U.S.C. § 2255* (ECF No. 59) (*First Mot. to Stay*); *Pet'r's Mot. Requesting Stay of Proceedings relating to Pending 28 U.S.C. § 2255 Pet.* (ECF No. 60) (*Second Mot. to Stay*). The motions cited the United States Supreme Court's January 9, 2015 order to the parties in *Johnson v. United States* to brief and argue "[w]hether the residual clause in the Armed Career Criminal Act of 1984, 18 U.S.C. § 924(e)(B)(ii), is unconstitutionally vague." *Second Mot. to Stay* at 1.

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, holding that imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process. 135 S. Ct. 2551 (2015). On July 7, 2015, citing *Johnson*, Mr. Vitko filed motions to amend and supplement his § 2255 motion. *Mot. for Leave to Amend 28 U.S.C. § 2255* (ECF No. 65); *Mot. for Leave to Suppl. 28 U.S.C. § 2255* (ECF No. 66). The Court appointed counsel to represent Mr. Vitko on September 2, 2015. *Order Appointing Counsel* (ECF No. 76). On September 22, 2015, through his newly appointed counsel, Mr. Vitko filed a memorandum in

support of his § 2255 motion, arguing that Mr. Vitko's increased sentence pursuant to the residual clause of the ACCA was unconstitutional under *Johnson*. *Mem. of Law in Supp. of Def.'s Mot. to Vacate, Set Aside, or Correct Sentence (Johnson Issue)* (ECF No. 79). On November 24, 2015, the Government responded. *Gov't's Resp. to Mem. in Support of Def.'s Mot. to Vacate, Set Aside or Correct Sentence (Docket # 79)* (ECF No. 86). On December 9, 2015, Mr. Vitko replied. *Def.'s Reply to the Gov't's Resp. (#86) in Support of Mot. to Vacate Set Aside or Correct Sentence (#32)* (ECF No. 87).

On April 4, 2016, this Court held, based on *Johnson*, that Mr. Vitko was serving a sentence that violates the United States Constitution and relief was warranted under 28 U.S.C. § 2255. *Order Den. the Recommended Decision of the Magistrate Judge and Granting Relief under 28 U.S.C. § 2255,* at 1 (ECF No. 88) (*Order*). Citing *United States v. Sanchez-Ramirez*, 570 F.3d 75 (1st Cir. 2009) and *James v. United States*, 550 U.S. 192 (2007), the Court concluded that because Mr. Vitko's sentence was enhanced under the residual clause of the ACCA, it was unconstitutional under *Johnson*. *Id.* at 27. The Court ordered him to be resentenced. *Id.*

The Government filed a motion for reconsideration of the Court's Order on April 7, 2016. *Gov't's Mot. for Reconsideration of Order Den. the Recommended Decision of the Magistrate Judge and Granting Relief under 28 U.S.C. § 2255* (ECF No. 91) (*Gov't's Mot.*). Mr. Vitko filed a response in opposition on April 18, 2016. *Def.'s Resp. to the Gov't's Mot. to Reconsider (#91) the Court's Order (#88) Denying the Recommended Decision (#58) and Granting the Def.'s Mot. to Vacate, Set Aside, or*

4

*Correct Sentence (#32)* (ECF No. 96) (*Def.'s Opp'n*).

## II.   THE PARTIES' POSITIONS

### A.   The Government's Motion for Reconsideration

The Government argues there are three reasons the Court should reconsider its Order granting Mr. Vitko relief pursuant to 28 U.S.C. § 2255 and instead deny his petition.   *Gov't's Mot*. at 1.   First, the Government takes issue with the Court's conclusion that, after assessing the charging documents for seven of Mr. Vitko's Florida burglaries, "it was <u>possible</u> that Mr. Vitko was convicted of 'nongeneric' burglary" and thus he was entitled to §[]2255 relief."   *Id.* at 2-3 (emphasis provided by Government).   The Government turns to Eleventh Circuit caselaw for the assertion that a conviction under Florida's burglary statute can qualify as "generic burglary" if the charging documents or other *Shepard*-approved[2] sources show that the offense involved unlawful entry into an actual building or structure.   *Id.* at 3-4 (citing *United States v. Weeks*, 711 F.3d 1255, 1262 (11th Cir. 2013); *United States v. Jackson*, 250 F. App'x 926, 927 (11th Cir. 2007); *United States v. Branson*, 200 F. App'x 939, 941-42 (11th Cir. 2006)).   The Government also cites *United States v. Matthews*, 466 F.3d 1271, 1274 (11th Cir. 2006), where a defendant's Florida burglary convictions did not qualify as "generic burglary" because the charging documents and conviction did not specify whether the defendant entered the roofed portion of a structure or only its curtilage.   *Id.* at 4.   The Government maintains that the *Shepard*-approved charging documents for Mr. Vitko's convictions specifically allege illegal entries with intent to

---

[2]        *Shepard v. United States*, 544 U.S. 13, 15-16 (2005).

commit crimes within seven dwellings or structures, that none of the charging documents alleges illegal entry into the curtilage, and thus his convictions should be subject to the ACCA's sentencing enhancement for committing generic burglary, not based on the residual clause. *Id.* at 4

Second, the Government asserts that while it generally has the burden to prove that a prior conviction is valid, on habeas review the burden is on the petitioner to show entitlement to relief, and when the evidence is in equipoise, the party with the burden of proof must lose. *Id.* at 6. The Government argues that, assuming it had any burden of production to show that Mr. Vitko had valid ACCA predicates, it satisfied that burden by presenting the Court with certified copies of the charging instruments of the seven Florida burglaries, which identify specifically by owner and address the building or dwelling entered. *Id.* at 9. Further, the Government argues that Mr. Vitko produced no evidence showing that his Florida convictions were for illegal entries into the curtilage, and that at best the evidence is in equipoise, and under such circumstances, because the burden of proof is on Mr. Vitko, he must lose. *Id.* at 10.

Finally, the Government encourages the Court to follow the approach of another District of Maine judge and revisit Mr. Vitko's prior convictions to consider whether they qualify under the "force" clause of the ACCA, which is still valid under *Johnson*. *Id.* at 11 (citing *United States v. Murdock*, No. 2:11-CR-08-DBH, No. 2:14-CV-205-DBH, 2016 WL 910153, at *2-4, 2016 U.S. Dist. LEXIS 30396, at *5-12 (D. Me. Mar. 9, 2016)).

### B.      Mr. Vitko's Response

Mr. Vitko argues that the Eleventh Circuit caselaw relied upon by the Government is flawed, as it ignores United States Supreme Court and Florida caselaw.  *Def.'s Opp'n* at 3.  Citing *Taylor v. United States*, 495 U.S. 575, 602 (1990), Mr. Vitko points to the Supreme Court's holding that:

> [I]f the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, **and that the jury necessarily had to find an entry of a building to convict**, then [the offense is a generic burglary].

 (emphasis provided by Mr. Vitko).  Turning to *Branson* and the Eleventh Circuit's analysis of a charging document that alleged the defendant entered "a certain structure, to wit: a storage shed," Mr. Vitko explains that the court expressly noted that a jury could have convicted the defendant of entering only the curtilage of the shed, ignoring *Taylor's* requirement that, for a conviction to be a generic burglary, it was necessary for a jury to find actual entry into a building.  *Def.'s Opp'n* at 3 (citing *Branson*, 200 F. App'x at 942).  As to *Weeks* and *Jackson*, Mr. Vitko argues that the Eleventh Circuit assumed incorrectly that the inclusion of the word "building" in the charging document "clarifies all doubt about whether the defendant was convicted of entry into the building, or into the curtilage." *Id.* at 3-4.

Mr. Vitko explains that under Florida law a charging instrument alleging entry into a structure described as a "building," "business," or "home" does not limit the proof necessary at trial to actual entry of a building, as those words are mere "surplusage."  *Id*. at 4.  He notes that under Florida law, "deviations from the facts alleged in the charging document [are] permitted [if] . . . the changed facts [are] not

essential elements of the charged offense," *id.* (citing *Ingleton v. State*, 700 So.2d 735, 739 (Fla. 5th DCA 1997)), and "where a variance between the allegations and proof is not such as to have misled the defendant or subject him to a substantial possibility of reprosecution for the same offense, the variance is immaterial and does not preclude conviction." *Id.* (citing *Grissom v. State*, 405 So.2d 291, 292 (Fla. 1st DCA 1981)).  Mr. Vitko contends that a Florida charging instrument asserting entry into a "building," "business," or "home" does not suffer a fatal variance "if the state merely proves that the person entered the curtilage of the building or home, so long as the instrument charges the essential element of entry into a 'structure' or 'dwelling.'" *Id.* at 4-5 (citations omitted).  He concludes that, applying these rules to the seven charging instruments for his burglaries, he could have been convicted by a jury of burglary for entering the curtilages of the various buildings, and that any variance between the charge of entry into a "building," "business," or "home" (which is not an element of the offense), and proof of entry only into the curtilage, would not be prejudicial and in no way limits the prosecution or proof at trial.  *Id.* at 5.

As to the Government's burden of proof argument, Mr. Vitko submits that his burden is only to prove that his convictions are facially invalid when considered as convictions for generic burglary, and that he is not required to go beyond the *Taylor* analysis and establish the facts of each conviction.  *Id.* at 6.  He argues that he has met his burden by showing that, while the convictions offered by the Government are facially valid convictions for violating Florida's burglary law, the properly analyzed *Shepard* sources do not establish them as convictions for generic burglaries, and that

8

he was thus sentenced under the residual clause. *Id.* at 7. Mr. Vitko also discusses that while the Government seized upon this Court's statement that "it is possible that Mr. Vitko was convicted on 'non-generic' burglary," this does not mean that the evidence is in equipoise. *Id.* Indeed, he contends that "the Court's inability to determine whether his convictions were for generic burglary is exactly the fact Mr. Vitko must prove to prevail." *Id.* at 7-8.

## III.   LEGAL STANDARDS

A motion "to alter or amend a judgment" is available under Federal Rule of Civil Procedure 59(e). FED. R. CIV. P. 59(e). Such motions are referred to in shorthand as "motions for reconsideration." *United States v. Poulin*, No. 1:08-cr-00050-JAW, No. 1:12-cv-00114-JAW, 2014 WL 1642269, at *2 (D. Me. Apr. 24, 2014). District courts enjoy considerable discretion in deciding Rule 59(e) motions for reconsideration. *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008).

A Rule 59(e) motion should not "raise arguments which could, and should, have been made before judgment issued." *Id.* (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). Moreover, a motion for reconsideration "is not a vehicle to force the court to think twice; it is not an opportunity for the losing party simply to press his unsuccessful arguments a second time in the hope that, by repetition, the court will see them his way." *Int'l Ass'n of Machinists & Aerospace Workers v. Verso Corp.*, 121 F. Supp. 3d 201, 217 (D. Me. 2015) (quoting *Poulin*, 2014 WL 1642269, at *2). "Instead, the motion provides the court with an opportunity to correct 'manifest errors of law or fact or to present newly discovered evidence.'" *Id.* Furthermore, "a

9

motion for reconsideration's utility is limited to: (1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Id.* at 217-18.

Rule 60(b) provides that, "on motion and on such terms as are just, a district court may relieve a party from a final judgment." *Ungar v. Palestine Liberation Org.*, 599 F.3d 79, 83 (1st Cir. 2010) (citing FED. R. CIV. P. 60(b)).  The specific grounds for relief under Rule 60 are grouped into six subsections; the first five subsections describe a particular basis for relief from judgment, while Rule 60(b)(6) is a catch-all provision that authorizes the district court to grant relief from judgment for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6).  "The decision to grant or deny such relief is inherently equitable in nature." *Ungar*, 599 F.3d at 83 (citing *United States v. One Star Class Sloop Sailboat*, 458 F.3d 16, 25-26 & n.10 (1st Cir. 2006); *Teamsters, Chauffeurs, Warehousemen & Helpers Union v. Superline Transp. Co.*, 953 F.2d 17, 19-20 (1st Cir. 1992)).  However, for the reasons discussed below, the Court denies the Government's Rule 59(e) motion to reconsider, and as the Government fails to offer "any other reason that justifies relief," the Court also denies the Government's motion under Rule 60(b)(6).  *See* 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2864 (3d ed. 2012) ("Courts have found few narrowly-defined situations that clearly present 'other reasons justifying relief'").

## IV.    DISCUSSION

### A.    Retroactivity

On April 18, 2016, the Supreme Court decided *Welch v. United States*, holding that "*Johnson* is . . . a substantive decision and so has retroactive effect . . . in cases on collateral review." 136 S. Ct. 1257, 1265 (2016). When the Court issued its Order on Mr. Vitko's § 2255 motion, *Welch* had not been decided, and the Court debated the merits of proceeding without guidance from the Supreme Court on the issue of *Johnson's* retroactivity. *Order* at 19-22. *Welch* provides definitive authority on the issue and the Court turns to the merits of the Government's motion for reconsideration.

### B.    The Analytic Pathway

As the Court described in its original Order, the Supreme Court and the First Circuit have explained how to approach the question of whether a particular prior conviction is a violent felony under the ACCA. *Order* at 23-24; *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013); *United States v. Carrigan*, 724 F.3d 39, 48 (1st Cir. 2013). The first step is to determine "if the statutory definition of the prior offense fits the ACCA's definitions of 'violent felony' . . . ." *Carrigan*, 724 F.3d at 48. In performing this categorical inquiry, courts "typically must limit [their] inquiry to the 'fact of conviction and the statutory definition of the prior offense.'" *Id.* (*quoting United States v. Moore*, 286 F.3d 47, 49 (1st Cir. 2002) (*quoting Taylor v. United States*, 495 U.S. 575, 602 (1990)). "This approach is deemed categorical because we may consider only the offense's legal definition, forgoing any inquiry into how the defendant may have committed the offense." *United States v. Holloway*, 630 F.3d 252, 256 (1st Cir. 2011). "If a prior conviction under state law is at issue, '[s]tate court

construction of the relevant state law dictates our result.'" *Carrigan*, 724 F.3d at 48 (quoting *United States v. Hart*, 674 F.3d 33, 41 (1st Cir. 2012)).  If the elements of the statute matches the definition of a generic burglary, the "inquiry ends and the prior conviction may be used as an ACCA predicate." *United States v. Miller*, 478 F.3d 48, 50-51 (1st Cir. 2007).

If the "underlying statute sweeps more broadly and defines burglary in terms that encompass but exceed the parameters of the generic definition, the court must move to the second step of the *Taylor* pavane in order to determine if 'the particular conviction actually embodied every element of a violent felony.'" *Id.* at 51 (*quoting United States v. Richards*, 456 F.3d 260, 262-63 (1st Cir. 2006)).  In making the second step inquiry, the court must limit its inquiry to documents "within the carapace of the record of conviction, such as 'the charging document, the terms of the plea agreement or transcript of the colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or some comparable judicial record of this information." *Id.* (*quoting Shepard*, 544 U.S. at 26).

## C.    The First Step: Generic Burglary

In its April 4, 2016 Order, the Court concluded that the Florida burglary statute under which Mr. Vitko was convicted was broader than the definition of a generic burglary because Florida includes "curtilage" in its definition of "structure." *Order* at 24 (citing FLA. STAT. § 810.011(1)).  The Court's conclusion on this point was consistent with binding precedent from the Supreme Court and the First Circuit interpreting this same Florida statute.  *James*, 550 U.S. at 212 (The "inclusion of

12

curtilage takes Florida's underlying offense of burglary outside the definition of generic burglary set forth in *Taylor*, which requires an unlawful entry into, or remaining in a '*building or other structure*'"); *Sanchez-Ramirez*, 570 F.3d at 82 n.7 ("Because Florida's burglary statute includes curtilage within its reach, and because the documents permissibly reviewed under *Shepard* . . . do not exclude the possibility that Sanchez was convicted of 'non-generic' burglary, we look only to the residual clause"); *see United States v. Ramírez*, 708 F.3d 295, 304 (1st Cir. 2013) ("[T]he inclusion of 'curtilage' makes Florida's definition of burglary of a dwelling broader than the generic meaning of burglary of a dwelling under the Guidelines") (career offender analysis).

The Government does not dispute the Court's conclusion that the Florida burglary statute is not coextensive with a generic burglary. *Gov't's Mot.* at 2 ("At pages 23 and 24 of its order, the Court correctly pointed out that burglary in violation of Florida Statute section 810.02(1) is not 'generic burglary' as *Taylor v. United States*, 495 U.S. [at 587-99] defines the term"); *see Baker v. State*, 622 So. 2d 1333, 1336 (Fla. 1st Dist. Ct. App. 1993) ("The statutory definition of dwelling or structure, as explained by Professor Jerome Latimer, is the result of the legislature's 'desire to expand the offense of burglary from its limited common law application'") (Ervin, J. dissenting) (quoting Jerome C. Latimer, *Burglary Is For Buildings, Or Is It? Protected Structures and Conveyances Under Florida's Present Burglary Statute,* 9 STETSON L. REV. 347, 348-49 (1979)).

### D.     The Second Step: *Shepard* Documents

Instead, the Government contends that the Court erred in its analysis of the second step in the ACCA inquiry. *Gov't Mot.* at 2-6. The Court applies the analytic method for the second step inquiry and addresses the Government's caselaw arguments.

### 1.    The *Shepard*-Approved Charging Instruments

The *Shepard* Court held that in assessing the applicability of the ACCA to "non-generic" burglary statutes, when reviewing convictions from a guilty plea, "any enquiry beyond statute and charging document must be narrowly restricted to implement the object of the statute and avoid evidentiary disputes." *Shepard*, 544 U.S. at 23 n.4; *see also United States v. Miller*, 478 F.3d 48, 51 (1st Cir. 2007) (citing *Shepard*, 544 U.S. at 26). In its motion for reconsideration, the Government points to the seven charging instruments for Mr. Vitko's Florida burglary convictions. *Gov't Mot.* at 4-5; *Gov't Mot. for Summ. Disposition of "Mot. under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody"* Attach. 1 *Fla. Convictions*, at 1-9 (ECF No. 50) (*Fla. Convictions*).

The language of the seven *Shepard*-approved charging instruments of Mr. Vitko's burglary convictions is significant. Each differed in subtle ways. The first charging instrument alleged that Mr. Vitko entered "a structure, to-wit: the dwelling house" of the victims:

> JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, prosecuting for the State of Florida, in the said County, under oath, information makes that MICHAEL VITKO of the County of Pinellas and State of Florida between the 4th day of August, 1979, and the 12th day of August in the year of our Lord one thousand nine hundred seventy-nine, in the County and State

aforesaid unlawfully and without invitation or license did enter a structure, to-wit: the dwelling house of Lawrence and Jan Schoenacher, located at 111 Fourth Avenue NW, Largo, Pinellas County, Florida, the property of Lawrence Schoenacher and Jan Schoenacher, his wife, with intent to commit an offense therein, to-wit: petit theft, and at the time the said structure was not open to the public, contrary to Chapter 810.02, Florida Statutes, and against the peace and dignity of the State of Florida.

*Id.* at 1.

The second charging instrument alleged that Mr. Vitko entered "a structure,

to-wit, that certain business" of the victim:

JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, prosecuting for the State of Florida, in the said County, under oath, information makes that MICHAEL VITKO of the County of Pinellas and State of Florida between the 29th day of March, 1979, and the 31st day of March in the year of our Lord one thousand nine hundred eighty, in the County and State aforesaid did unlawfully and without invitation or license enter or remain in a structure, to-wit: that certain business known as Al's Autos, located at 5100 66th Street North, St. Petersburg, Pinellas County, Florida, the property of Albert Leon Bourque, with intent to commit an offense therein, to-wit: theft, and at the time the said structure was not open to the public;

*Id.* at 3.

The third charging instrument alleged that Mr. Vitko entered "that certain

structure, the dwelling of" the victims:

JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, prosecuting for the State of Florida, in the said County, under oath, information makes that MICHAEL VITKO of the County of Pinellas and State of Florida between the 4th day of May, and the 9th day of May in the year of our Lord one thousand nine hundred eighty, in the County and State aforesaid unlawfully and without invitation or license did enter that certain structure, the dwelling of Stanley and Anne L. Boguski, located at 4256 49th Avenue South in the City of St. Petersburg, in the County and State aforesaid, the property of Stanley and Anne L. Boguski, with intent to commit an

offense therein, to-wit: petit theft, said structure not at the time open to the public;

*Id.* at 4.

The fourth charging instrument alleged that Mr. Vitko entered "a structure, to-wit: that certain building" of the victim and "during the course thereof did arm himself within said structure with an explosive or dangerous weapon":

> JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, prosecuting for the State of Florida, in the said County, under oath, information makes that MICHAEL VITKO, a/k/a JAMES MCMURRY of the County of Pinellas and State of Florida between the 2nd and the 3rd day of January in the year of our Lord one thousand nine hundred eighty-one, in the County and State aforesaid unlawfully and without invitation or license did enter a structure, to-wit: that certain building known as Associates Realty N.W., Inc., located at 6669 54th Avenue North, St. Petersburg, Pinellas County, Florida, the property of Associates Realty, N.W., Inc., with intent to commit an offense therein, to-wit: theft, and during the course thereof did arm himself within said structure with an explosive or dangerous weapon, to-wit: a firearm, the said structure not at the time open to the public;

*Id.* at 5.

The fifth charging instrument alleged that Mr. Vitko entered "a structure, to-wit: that certain building" of the victim:

> JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, prosecuting for the State of Florida, in the said County, under oath, information makes that MICHAEL VITKO of the County of Pinellas and State of Florida between the 29th day of May, and 30th day of November in the year of our Lord one thousand nine hundred eighty, in the County and State aforesaid unlawfully and without invitation or license did enter a structure, to-wit: that certain building known as Ra-Jo Realty, located at 4700 66th Street North, St. Petersburg, Pinellas County, Florida, the property of John P. Koelsch and Denis B. Koelsch, d/b/a Ra-Jo Realty, with intent to commit an offense therein, to-wit: theft, and the said structure not at the time open to the public;

16

*Id.* at 6.

The sixth charging instrument alleged that Mr. Vitko entered or remained in

"a structure, to-wit: that certain building":

> JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, prosecuting for the State of Florida, in the said County, under oath, information makes that JAMES MCMURRY, a/k/a MELVIN VITKO, a/k/a MARVIN VITKO of the County of Pinellas and State of Florida on the 2nd day of February in the year of our Lord one thousand nine hundred eighty-one, in the County and State aforesaid unlawfully and without invitation or license did enter or [remain] in a structure, to-wit: that certain building known as William H. Schmid, M.D., P.A., located at 4805 49th Street North, St. Petersburg, Pinellas County, Florida, the property of William H. Schmid, M.D., P.A., with intent to commit an offense therein, to-wit: theft, and the said structure not at the time open to the public; contrary to Chapter 810.02, Florida Statutes, and against the peace and dignity of the State of Florida.

*Id.* at 7.

The final charging instrument alleged that Mr. Vitko entered "that certain

structure other than a dwelling":

> JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, prosecuting for the State of Florida, in the said County, under oath, information makes that MELVIN VITKO, sometimes known as James McMurray of the County of Pinellas and State of Florida on the 2nd day of February in the year of our Lord one thousand nine hundred eighty-one, in the County and State aforesaid unlawfully and without invitation or license did enter that certain structure other than a dwelling, to-wit: Vision Clinic, Inc., a Florida corporation, located at 5700 54th Avenue North, in the City of Kenneth City, in the County and State aforesaid, the property of Vision Clinic, Inc., a Florida corporation, with the intent to commit an offense therein, to-wit: theft, and the said structure not at the time open to the public;

*Id.* at 9.

Florida law contains statutory definitions of the terms "structure" and "dwelling."  The Florida statute defines "structure" to mean "a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof." FLA. STAT. § 810.011(1), and "dwelling" to mean "a building or conveyance of any kind, including any attached porch, whether such building is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof."[3]  FLA. STAT. 810.011(2).

The Court must read the Florida statutory definitions into the charging instruments' references to these terms.  For example, the seventh indictment would read:

> JAMES T. RUSSELL, State Attorney for the Sixth Judicial Circuit of Florida, in and for Pinellas County, prosecuting for the State of Florida, in the said County, under oath, information makes that MELVIN VITKO, sometimes known as James McMurray of the County of Pinellas and State of Florida on the 2nd day of February in the year of our Lord one thousand nine hundred eighty-one, in the County and State aforesaid unlawfully and without invitation or license did enter that certain structure (*a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof*) other than a dwelling, to-wit: Vision Clinic, Inc., a Florida corporation, located at 5700 54th Avenue North, in the City of Kenneth City, in the County and State aforesaid, the property of Vision Clinic, Inc., a Florida corporation, with the intent to commit an offense   therein, to-wit: theft, and the said structure (*a building of any kind, either temporary or permanent, which has a roof over it, together with the curtilage thereof*) not at the time open to the public;

(emphasis supplied).  With this statutory definition in mind, the Government could

---

[3]     The Florida Supreme Court held that the term "curtilage" requires that there be "some form of enclosure" around the building.  *State v. Hamilton*, 660 So. 2d 1038, 1044 (Fla. 1995).  This interpretation of the term does not change the analysis here.

have proved that Mr. Vitko committed this burglary by showing he had only entered a fenced-in portion of Vision Clinic, Inc.'s property and stolen its property, as he would have only entered the "curtilage" of Vision Clinic, Inc.'s building to commit the theft.

The view that a person may commit a burglary under Florida law without actually entering into the victim's building but only entering the curtilage is consistent with Florida caselaw. *Baker*, 622 So. 2d at 1335 ("[T]he trial judge correctly instructed the jury that a 'structure' could include the enclosed grounds immediately surrounding the building") (citing FLA. STD. JURY INSTR. (CRIM.) 136); *J.E.S. v. State*, 453 So. 2d 168 (Fla. 1st Dist. Ct. App. 1984) (the driveway of a home is part of the curtilage so that theft of a bicycle from the driveway constitutes burglary); *Tobler v. State*, 371 So. 2d 1043 (Fla. 1st Dist. Ct. App. 1979) (the fenced area surrounding a warehouse is part of the curtilage so that entry onto the grounds to accomplish a theft constitutes burglary); *DeGeorge v. State*, 358 So. 2d 217 (Fla. 3d Dist. Ct. App. 1978) (defendant's attempt to steal property located on pavement area outside warehouse constituted burglary); *Greer v. State*, 354 So. 2d 952 (Fla. 3d Dist. Ct. App. 1978) (defendant properly convicted of burglary on facts showing that he had scaled a fence surrounding an automobile dealership and was found hiding under a van in the parking area).

### 2.    Structure or Dwelling Allegations

Under this authority, the second charging instrument for the March, 1979 Al's Auto burglary, which alleged only entering a "structure," the third charging instrument for the May, 1980 Boguski burglary, which alleged only a "structure" or

"dwelling," and the seventh charging instrument for the February, 1981 Vision Clinic burglary, which alleged only a "structure" would not constitute generic burglaries since the crimes could have been committed by entering the curtilages alone.

### 3.      Structure and Building Allegations

The fourth, fifth and sixth charging instruments allege that Mr. Vitko entered "a structure, to-wit: that certain building."   Whether the reference to "building" excludes the curtilage is a closer question.  The definition of "structure" states:

> "Structure" means a building of any kind, either temporary or permanent,  which has a roof over it, together with the curtilage thereof.

FLA. STAT. § 810.11(1).   The term "structure" clearly includes the curtilage; the question is whether the term "building," standing alone, includes or does not include the curtilage.  Even though there is room for ambiguity, this definition distinguishes between the "building" and the "curtilage."   It does not say, for example, that the definition of building includes the curtilage, but that the term "structure" includes both a building and the curtilage, confirming a distinction between the two.

The Court concludes that the charging instruments' references to "building[s]" without reference to curtilage mean that the charging documents alleged a building entry consistent with a generic burglary.  Thus, interpreting the language of the charging documents alone, the fourth charging instrument for the January, 1981 Associates Realty burglary, the fifth charging instrument for the November, 1980 Ra-Jo Realty burglary, and the sixth charging instrument for the February, 1981 Schmid burglary allege generic burglaries because the charging documents allege entry of a building, not the curtilage.

### 4.  Structure and Dwelling House Allegation

The first charging instrument alleges that Mr. Vitko entered "a structure, to-wit: the dwelling house" of the victims.  Florida statute defines "dwelling" to include the curtilage:

> "Dwelling" means a building or conveyance of any kind, including any attached porch, whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof.

FLA. STAT. § 810.011(2).  Here, the Court concludes that by using the term "house" and alleging that Mr. Vitko entered the house, the language of the charging document alleged a generic burglary.  By analyzing the language of the information, the Court concludes that the first charging instrument for the August, 1979 Schoenacher burglary constitutes a generic burglary since Mr. Vitko could have committed the crime only by entering the victim's house.

### 5.  Initial Conclusion and Eleventh Circuit Caselaw

Examining the language of the charging documents in Mr. Vitko's case, the Court concludes that three of the charging documents are not sufficient to constitute a generic burglary, but four are.  This conclusion is consistent with the Eleventh Circuit cases that the Government cited in its motion for reconsideration: *Weeks*, *Jackson*, and *Branson*.

The first Eleventh Circuit case to address this issue is *Branson*, a 2006 opinion. In *Branson*, the Eleventh Circuit concurred with the view that the same Florida burglary statute "is non-generic."  200 F. Appx. at 941.  It turned to the charging

21

document, which charged "'unlawfully enter[ing] or remain[ing] in a certain structure, to-wit: *a storage shed*' with intent to commit theft within." *Id.* at 941 (emphasis in original). The *Branson* Court concluded that "[a]lthough, under the Florida burglary statute, Branson *could* have been convicted for burglary of only a structure's curtilage, the charging document indicates that he *did*, in fact, burglarize 'a certain structure, to wit: a storage shed[.]'" *Id.* at 942 (emphasis in original). The *Branson* Court's decision is echoed in *United States v. Orkiese*, 208 F. Appx. 436 (6th Cir. 2006), which came to the same conclusion regarding a conviction under the Florida burglary statute, when the charging document alleged that the defendant entered "a certain structure other than a dwelling, to-wit: a storage cottage." *Id.* at 440-41.

From the Court's perspective, *Branson* and *Orkiese* are easier cases than the charging instruments in Mr. Vitko's case. The informations' references to entering or remaining in a storage shed and a storage cottage do not incorporate any statutory definitions that include curtilage and therefore the Court does not interpret *Branson* as addressing a case similar to the instant case or requiring a different result.

In 2007, the Eleventh Circuit addressed a similar issue in *Jackson*. The *Jackson* Court quoted the language in the charging document: that the defendant pleaded guilty to "unlawfully enter[ing] or remain[ing] in a structure, to-wit: a building." 250 F. Appx. at 928. The *Jackson* Court viewed the reference to a "building" to demonstrate that "he did, in fact, burglarize a building." *Id.* at 929.

The third cited Eleventh Circuit case is *Weeks*, decided in 2013.  The *Weeks* Court did not quote the charging documents but stated that because "the charging documents show that Weeks was charged with unlawfully entering into three separate buildings with intent to commit a crime, his convictions qualify as generic burglaries under the ACCA's enumerated-offenses clause and, thus, we do not even have to apply the residual clause."  *Id.* at 1263.[4]

Finally, in 2006, the Eleventh Circuit concluded that an information charging a Florida burglary did not constitute a generic burglary.  *Matthews*, 466 F.3d at 1274-75.  In *Matthews*, the information alleged that the defendant had entered "a structure or curtilage thereof," and the Eleventh Circuit agreed with the defendant that "on this record, one cannot determine whether either of his two third-degree burglary convictions was for burglary of the roofed portion of a structure.  It may be that Matthews was convicted of these burglaries for entering the curtilages of the structures."  *Id.*

The *Matthews* decision is significant because the Eleventh Circuit has acknowledged that if the charging document alleges a burglary that includes the curtilage, it does not allege a generic burglary.  Applying *Matthews*, it would seem that if the charging document made reference to a term, such as structure or dwelling, which incorporates the curtilage, the charging document has not alleged a generic

---

[4]      The quoted language in *Weeks* differs slightly from the charging instruments in this case.  Each of the informations in Mr. Vitko's case allege that the defendant did "enter," not that he "entered into."  The proposition that the information charged an entry into a building, not just the curtilage, is slightly stronger if the information alleges not just an entry but an entry into a building.

burglary.  This case is in accordance with the Court's conclusion about the second, third, and seventh charging instruments.

### 6.    Supreme Court and First Circuit Caselaw

The Court turns to whether caselaw from the Supreme Court and the First Circuit compel a different result, namely the Supreme Court case of *James*, as limited by *Johnson*, and the First Circuit opinion of *Sanchez-Ramirez*.

In *James*, the Supreme Court merely confirmed that "the inclusion of curtilage takes Florida's underlying offense of burglary outside the definition of 'generic burglary' set forth in *Taylor*," a conclusion this Court applies here.  *James*, 550 U.S. at 212.  The *James* Court decision rested on the now discredited residual clause of the ACCA.  *Id.* at 213.  The Supreme Court's decision to turn to the residual clause and not to resolve the appeal based on the modified categorical approach is some support for the Court's analysis here.

Similarly, in *Sanchez-Ramirez*, the First Circuit addressed the interaction between charging documents and ACCA status involving the same Florida burglary statute.  *Sanchez-Ramirez*, 570 F.3d at 81-83.  After concluding that the convictions did not fit the definition of "generic burglary," the First Circuit discussed whether the convictions fit within the ACCA's residual clause.  *Id.* at 82.  The First Circuit did not need to confront whether Mr. Sanchez-Ramirez's Florida burglaries, as charged, constituted generic burglaries.[5]

---

[5]    On May 17, 2016, the First Circuit issued an order granting Mr. Sanchez-Ramirez the right to file a successive 28 U.S.C. § 2255 petition.  *Sanchez-Ramirez v. United States*, No. 16-1416 (1st Cir. May 17, 2016).  The First Circuit determined that, pursuant to *Johnson*, 135 S. Ct. 2551 and *Welch*, 136 S. Ct. 1257, Mr. Sanchez-Ramirez made a "prima facie showing" that his § 2255 petition relies on

However, this Court did so.  *See United States v. Sanchez-Ramirez*, No. 1:05-cr-71-JAW-1, 2007 U.S. Dist. LEXIS 94146 (D. Me. Dec. 21, 2007).  Mr. Sanchez-Ramirez was charged in Florida with three burglaries: (1) "[Defendant] did unlawfully enter or remain in a certain structure, the property of THE BETHEL TEMPLE ASSEMBLY OF GOD"; (2) [Defendant] did unlawfully enter or remain in a certain structure, the property of ST. JOHN PRESBYTERIAN CHURCH"; and (3) "[Defendant] did unlawfully enter or remain in a structure, to wit: a building and/or the curtilage thereof . . . the property of THE FIRST BAPTIST CHURCH, and/or REV. LAWRENCE COLE".  *Id.* at *8-9.  Based on this Court's analysis both in *Sanchez-Ramirez* and in this opinion, these allegations were "not generic because they can include burglary of a curtilage."   *Id.* at *10.  As with *James*, the First Circuit's decision on appeal not to disturb this conclusion but to reach the residual clause is some support for this Court's analysis here.

### 7.    Variance Between the Language of the Charging Instrument and Proof at Trial

Another way of looking at this question is whether the state of Florida could successfully prosecute a defendant where the evidence at trial established that he only entered the curtilage, even though the charging instrument alleged not only that the defendant entered a structure or dwelling, but also that he entered a building or house.  To place this issue in context, assume that Mr. Vitko had in fact entered only the curtilage of the Schoenachers' home in August, 1979, when he committed the

---

"a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court."
*Id.* at 1 (citing 28 U.S.C. §§ 2255(h)(2), 2244(b)(3)(C)).  Mr. Sanchez-Ramirez may now file his § 2255 petition in this Court.

Schoenacher burglary.  The question would be whether at trial Mr. Vitko would have been able to hold the state of Florida to the allegation in the information that he had entered "a structure, to-wit: the dwelling house" of the victims and, if the evidence at trial had demonstrated only that he had entered the curtilage, whether he would have been entitled to an acquittal.  The Court is aware of no direct authority on this point.

Mr. Vitko cites *Baker*, a 1993 Florida District Court of Appeals case, but *Baker* is not determinative because the charging instrument only alleged that the defendant entered a "dwelling" and by statute, "dwelling" includes the curtilage.  622 So. 2d at 1334 (The charging instrument alleged that the defendant "entered or remained in Robert Wilson's dwelling with the intent to commit an unspecified offense"); FLA. STAT. 810.011(2) (defining "dwelling" to mean a building "together with the curtilage thereof").  It is unremarkable, therefore, that the *Baker* Court concluded that there was no fatal variance between the charging instrument and the evidence in that case.

In his reply memorandum, however, Mr. Vitko cites another Florida case that leads to the answer, at least by analogy.[6]  In *Ingleton v. State*, 700 So. 2d 735 (Fla. 5th Dist. Ct. App. 1997), the Florida District Court of Appeals addressed a case where a defendant had been charged with first degree murder.  *Id.* at 736.  The charging instrument had alleged he had unlawfully killed another human being, "WENDY PRIOR, *by STRAGGLING WENDY PRIOR*."  *Id.* at 737.  The evidence suggested that Ms. Prior could have died either by straggling or by a drug overdose and the state of

---

[6]     As the Court earlier observed, "[i]f a prior conviction under state law is at issue, [s]tate court construction of the relevant state law dictates our result." *Holloway*, 630 F.3d at 256 (internal punctuation omitted).

26

Florida decided to go forward to trial on the alternative theory of a deliberate drug overdose. *Id.* at 737-38. Arguing that the information restricted what the state of Florida could prove at trial, Mr. Prior sought to prevent the prosecution from presenting evidence of the overdose theory. *Id.* at 738-39. The prosecution sought to strike the allegation "by STRANGLING WENDY PRIOR" from the information on the ground that this language was superfluous. *Id.* at 738.

The *Ingleton* Court noted that the "essential elements of the grand jury's first-degree murder charge against Ingleton were: first, that Wendy Prior was dead; second, that her death was caused by Ingleton; and third, that the action of causing her death was premeditated." *Id.* at 740 (citing FLA. STAT. 782.04(1)). The appeals court stated that "the particular manner by which Ingleton allegedly killed Prior was not an essential element of the offense." *Id.* The *Ingleton* Court concluded that "[b]ecause the state's alteration of its theory as to the cause of Prior's death produced a variance, and not an amendment, and no prejudice has been shown, we conclude that the variance was not fatal." *Id.*

In reaching its conclusion, the *Ingleton* Court cited numerous Florida cases where a variance between the charging document and the evidence had been permissible. *Id.* at 739 (citing *e.g.*, *Grissom v. State*, 405 So. 2d 291 (Fla. 1st Dist. Ct. Appeals 1981) (charging document alleged the defendant stole a cow (a female bovine); the evidence demonstrated that he stole a male calf); *Mas v. State*, 222 So. 2d 250 (Fla. 3rd Dist. Ct. App. 1969) (statute criminalized throwing a missile that could produce death or great bodily harm, charging document alleged that defendant

threw a fire-bomb, the prosecution produced no trial evidence that the defendant threw a fire bomb as opposed to another type of potentially lethal missile, and the conviction was upheld because additional language of "to-wit: a fire bomb" was surplusage).

The most directly analogous Florida authority comes from a separate provision of the Florida burglary statute, Florida Statute chapter 810.07, which establishes a presumption of intent if the defendant entered a building with the intent to commit a crime. *See L.S. v. State*, 464 So. 2d 1195, 1195 (Fla. 1985). In *L.S.*, the state charged that the defendant entered a structure "with the intent to commit an offense therein, to wit: THEFT in violation of 810.02, Florida Statutes." *Id.* The Florida Supreme Court rejected the defendant's argument that the prosecution had failed to prove that he had intended to commit a theft as opposed to some other crime. *Id.* at 1195-96. The *L.S.* Court concluded:

> [A]n indictment or information charging burglary need not specify the offense which the defendant is alleged to have committed, although it must allege an intention to commit *an* offense. Thus, the exact nature of the offense alleged is, as indicated by the lower court, surplusage so long as the essential element of intent to commit an offense is alleged.

*Id.* at 1196 (emphasis in original). The Florida courts have consistently applied this rule. *See State v. Smith*, 464 So. 2d 4, 4 (1986); *Toole v. State*, 472 So. 2d 1174, 1175 (1985); *Graham v. State*, 472 So. 2d 464, 465-66 (1985); *State v. T.L.J.*, 464 So. 2d 1196, 1196 (1985); *Long v. State*, No. 1D15-2272, 2016 Fla. App. LEXIS 5182, at *14-16, 2016 WL 1295087, at *5-6 (Fla. Dist. Ct. App. 1st Dist., Apr. 4, 2016).

This analysis is further supported by Florida's standard jury instructions for burglary.  *See Johnson. Mem. of Law in Supp. of Def.'s Mot. to Vacate, Set Aside, or Correct Sentence (Johnson Issue*) Attach 1 *Fla. Std. Jury Instr. 13.1* (ECF No. 79) (*Jury Instr.*).   In relevant part, the jury instructions set forth the elements of the crime of burglary under section 810.02 of the Florida statutes:

### 13.1 BURGLARY
§ 810.02, Fla. Stat.

*Give if the information or indictment charges entering with the intent to commit an offense:*

**To prove the crime of Burglary, the State must prove the following . . . elements beyond a reasonable doubt**:

**1.** (Defendant) **entered a [structure] [conveyance] owned by or in  the possession of** (person alleged).

**2. At the time of entering the [structure] [conveyance],** (defendant) **had the intent to commit** [(the crime alleged)**] [an offense other than burglary or trespass] in that [structure] [conveyance].**

*Id.* at 1.  The jury instructions define "structure" as "any building of any kind, either temporary or permanent, that has a roof over it, and the enclosed space of ground and outbuildings immediately surrounding that structure," and "dwelling" as "a building [or conveyance] of any kind, whether such building [or conveyance] is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the enclosed space of ground and outbuildings immediately surrounding it."[7]  *Id.* at 3-4.

---

[7]      Regarding a "dwelling," the Florida jury instructions state: "[i]f you find (defendant) guilty of burglary, you must also determine if the State has proved beyond a reasonable doubt whether the [structure] [conveyance] [entered] [remained in] was a dwelling."  *Jury Instr.* at 4.

Applying Florida authority, even for the informations that alleged Mr. Vitko entered a "building" or "house," he could have been found guilty of burglary at trial for only having entered the curtilage, defined in the jury instructions as "the enclosed space of ground and outbuildings immediately surrounding" the structure or dwelling.  The Florida courts would view the more specific allegation of "house" or "building" as surplusage, and so long as the prosecution proved at trial the elements of the crime of burglary, including only entering into the curtilage, the Florida courts would affirm the conviction.

This brings the Court back to the possibility that, according to the language of the *Shepard*-approved charging documents, Mr. Vitko entered only the curtilage even though he was charged with entering a building or house.  Based on Florida law, the variance between the charge and the proof would not have been a legitimate basis to challenge the charge, and thus it is possible that he committed and pleaded guilty to non-generic burglaries in all of the charging documents in his case.

### 8.    Conclusion

In *Sanchez-Ramirez*, the First Circuit addressed a similar argument regarding the proper interpretation of the same Florida burglary statute and concluded that the charging documents "do not exclude the possibility that [the defendant] was convicted of a non-generic burglary."  570 F.3d at 82 n.7.  Using this standard, the Court continues to conclude, based on the language of the charging documents, that it is possible Mr. Vitko was convicted of entering the curtilage of the structures, rather than the structures themselves.  *See United States v. Gomez-Guerra*, 485 F.3d 301

(5th Cir. 2007) (defendant's Florida burglary conviction was not conviction for enumerated offense of "burglary of a dwelling" as would support sentence enhancement for "crime of violence" under guidelines because defendant "could have been convicted of merely entering a dwelling's curtilage"). The Government's motion for reconsideration fails to show that the Court's conclusion based on *Sanchez-Ramirez* is in "manifest error" or is a "clear error of law." *Verso Corp.*, 121 F. Supp. 3d at 217-18.

### E.    Burden of Proof

The Government argued at length that, in the context of a 28 U.S.C. § 2255 motion, the burden is on the petitioner to show entitlement to relief. *Gov't's Mot.* at 6-10 (citing *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *Mack v. United States*, 635 F.2d 20, 26-27 (1st Cir. 1980); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978)). As such, the Government again takes issue with the Court's conclusion that "it was possible that Mr. Vitko was convicted of 'non-generic' burglary," *id.* at 10 (citing *Order* at 25-26) (emphasis added by Government), and asserts that Mr. Vitko failed to meet his burden of proof to show that his Florida convictions were illegal entries into the curtilage, and not the building or house itself. *Id.*

In making its argument the Government turns to *United States v. Hartsock*, 347 F.3d 1, 5-10 (2003) to argue that, in the context of post-conviction review, because the burden of proof is on Mr. Vitko, and he was present in the courtroom during his state of Florida convictions, he is in a better position to reconstruct the prior

proceedings and produce evidence that he was convicted of "non-generic" burglary. *Gov't's Mot.* at 7-9. The Government also notes that its ability to obtain anything more than the judgments of the prior conviction is severely hampered because state courts "routinely destroy supporting records," and to require the Government to obtain these records would "place an impossible burden on the prosecution to establish the existence of facts within the special knowledge of the defendant." *Id.* at 8 (citing *Hartsock*, 347 F.3d at 9). The Government says that though it "is in the process of attempting to obtain the pertinent transcripts and records from the Florida courts, it is likely that, because of the age of these convictions [i.e., 1980 and 1981], the state court records have been destroyed." *Id.* at 9-10 (citing *Hartsock*, 347 F.3d at 9).

The Court agrees with the Government that the burden of proof is on Mr. Vitko to show entitlement to relief in his § 2255 motion. *See David*, 134 F.3d at 474; *Mack*, 635 F.2d at 26-27; *DiCarlo*, 575 F.2d at 954. However, the Court concludes that Mr. Vitko's burden of proof is satisfied by the *Shepard*-approved charging instruments for his seven Florida burglaries, as they established he was sentenced under the residual clause of the ACCA, and not for "generic burglary." Despite the Government's assertion, the evidence is not in equipoise, but instead lists in favor of Mr. Vitko under *Sanchez-Ramirez* "because the documents permissibly reviewed under [*Shepard*] do not exclude the possibility that [the defendant] was convicted of 'non-generic' burglary." 570 F.3d at 82 n.7. The Government's argument as to the burden of proof

fails to show that the Court's original Order was in "manifest error" or "clear error of law." *Verso Corp.*, 121 F. Supp. 3d at 217-18.

The Court notes that were it to follow the Government's argument, in order to meet his burden of proof, Mr. Vitko would need to provide the transcripts and records from his burglary convictions in the Florida courts. However, as the Government notes, "it is likely that, because of the age of these convictions, the state court records have been destroyed." *Id.* at 9-10 (citing *Hartsock*, 347 F.3d at 9). As such, the Government readily admits that the burden of proof it advocates for would in effect bar Mr. Vitko from obtaining the relief he seeks, despite the merits of his § 2255 motion.

## F.   ACCA "Force" Clause

Finally, the Government urges the Court to follow the recent Maine District Court decision of *Murdock*, 2016 WL 910153 at *2-4 and consider whether Mr. Vitko's prior convictions would instead qualify under the "force" clause of the ACCA.[8] The Court declines the Government's invitation. Unlike in *Murdock*, this argument was first raised in the Government's motion for reconsideration, and as discussed, Rule 59(e) motions are not the time to "raise arguments which could, and should, have been made before judgment issued." *Advest*, 512 F.3d at 55.

Even so, the Government fares no better when the Court reaches the merits of its argument. The Government's reliance on *Murdock* is misplaced. Mr. Murdock's

---

[8]   The "force" clause under the ACCA is a "violent felony" that is punishable by imprisonment for a term exceeding one year and "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. 924(e)(2)(B)(i).

three predicate ACCA convictions were (1) a 1979 Virginia robbery conviction, (2) a 1989 Massachusetts conviction for assault and battery with a dangerous weapon, and (3) a 2007 Florida aggravated assault conviction. *Murdock*, 2016 WL 910153, at *3. Mr. Murdock conceded the robbery conviction qualified categorically as an ACCA predicate violent felony, and Judge Hornby found that caselaw clearly held the other two convictions were from statutes that have "as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at *4-5 (citing *United States v. Whindleton*, 797 F.3d 105, 112-13 (1st Cir. 2015) ("the element of a dangerous weapon imports" violent force); *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1338 (11th Cir. 2013) (Florida aggravated assault statute by definition "necessarily includes an assault, which is 'an intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so' . . . and [t]herefore . . . will always include 'as an element the . . . threatened use of physical force against the person of another'")).

Mr. Vitko's circumstances present a sharp contrast to Mr. Murdock's, as the Supreme Court in *James* found that under Florida law, attempted burglary does not qualify as a "violent felony" under the "force" clause because it does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." *James*, 550 U.S. at 197 (citing 18 U.S.C. § 924(e)(2)(B)(i)). As an attempted burglary is not a violent felony under the force clause, logic dictates that an actual burglary, without more, would not be either. This conclusion is further supported by the First Circuit's holding in *United States v. Farrell*, which found that

when interpreting Pennsylvania's similarly worded burglary statute that the "statute does not have as an element the threat or use of physical force, so it does not come within [the "force" clause] of the ACCA."[9]  672 F.3d 27, 30 (1st Cir. 2012).

Mr. Vitko has now twice successfully argued that his sentencing enhancement was predicated on the residual clause of the ACCA, and finding no clear error of law or need to prevent manifest injustice, the Court considers Mr. Vitko's § 2255 motion resolved.

## V.   CONCLUSION

The Court DENIES the Government's Motion for Reconsideration (ECF No. 91).  Accordingly, the Court again orders Mr. Vitko resentenced under 18 U.S.C. § 922(g)(1).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of May, 2016

---

[9]      *Compare* 18 PA. CONS. STAT. § 3501 ("A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.  The statute is further illuminated by the definition of 'occupied structure' as '[a]ny structure, vehicle or place adapted for overnight accommodation of persons, or for carrying on business therein, whether or not a person is actually present'"), *with* FLA. STAT. § 810.02(1)(a) ("For offenses committed on or before July 1, 2001, 'burglary' means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain").